LAWRENCE WASDEN
ATTORNEY GENERAL

BRIAN KANE, ISB #6264
Assistant Chief Deputy Attorney General

STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation

MICHAEL S. GILMORE, ISB #1625
KARIN D. JONES, ISB #6846
Deputy Attorneys General
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:  (208) 334-2400
Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONALD N. DAIEN, | )    Case No. 09-022-S-REB |
| | ) |
|           Plaintiff, | )    **DEFENDANT'S** |
| | )    **MEMORANDUM IN** |
| vs. | )    **OPPOSITION TO PLAINTIFF'S** |
| | )    **MOTION FOR SUMMARY** |
| BEN YSURSA, in his official capacity as | )    **JUDGMENT (DKT. 29)** |
| Secretary of State of the State of Idaho, | ) |
| | ) |
|           Defendant. | ) |

COMES NOW Defendant the Hon. Ben Ysursa, Secretary of State of the State of Idaho,

by and through his undersigned counsel of record, and hereby submits this Memorandum in

Opposition to Plaintiff's Motion for Summary Judgment, Dkt. 29.

Plaintiff Donald Daien seeks summary judgment on his claims that Idaho Code

§§ 34-708A and 34-1807 violate his rights to free speech, free association, and equal protection

of the laws under the First and Fourteenth Amendments of the United States Constitution.  In

responding to Plaintiff's Memorandum of Points and Authorities in Support of Contemporaneous Motion for Summary Judgment, Dkt. 29-2 ("Plaintiff's MSJ Memorandum"), Defendant hereby incorporates by reference the arguments set forth in his Memorandum in Support of Defendant's Motion for Summary Judgment, Dkt. 28-3 ("Defendant's MSJ Memorandum.")  Defendant respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment as a matter of law on the following grounds: (1) Plaintiff's claims are not justiciable, as Plaintiff lacks standing, and as his claims are not ripe for review; and (2) even if Plaintiff's claims were justiciable, Idaho Code §§ 34-708A and 34-1807 are constitutional, as they strike a constitutional balance between serving the state's important interests in regulating elections and preventing election fraud, while not imposing any significant burden upon Plaintiff's constitutional rights.

## BACKGROUND

The factual background of this case is discussed in more detail in the "Background" section of Defendant's MSJ Memorandum, Dkt. 28-3, and Defendant's Statement of Material Facts that Defendant Contends Are Not in Dispute, Dkt. 28-2 ("Defendant's Statement of Facts.")  In brief, under Idaho's election statutes, an individual who desires to be placed on the Idaho ballot as an Independent candidate for the office of President of the United States ("President") is required to submit a declaration of candidacy accompanied by "a petition signed by a number of qualified electors not less than one percent (1%) of the number of votes cast in this state for presidential electors at the previous general election at which a president of the United States was elected."  I.C. § 34-708A.  For the 2012 election, the 1% requirement will constitute 6,550 signatures, based upon the number of votes case for the last Presidential election in Idaho.  See Affidavit of Defendant, the Hon. Ben Ysursa, Secretary of State of the State of Idaho, Dkt. 28-6 ("Ysursa Aff."), ¶ 3.  The petition accompanying a proposed Independent

candidate's declaration of candidacy must comply with Idaho Code § 34-1807, which provides that "[a]ny person who circulates any petition for an initiative or referendum shall be a resident of the state of Idaho . . .."  I.C. § 34-1807; I.C. § 34-708A; <u>see</u> Defendant's MSJ Memorandum, pp. 2-3.

Plaintiff is a resident of Arizona who states that he wishes to circulate petitions in Idaho on behalf of a potential Independent candidate for President, "specifically Ralph Nader or other similarly-minded persons."  Complaint, ¶¶ 4-5, 10; Defendant's Statement of Facts, ¶¶ 1-2.  He does not claim to be a potential candidate himself.  <u>See id.</u>; Plaintiff's Statement of Material Facts, Dkt. 29-3.   He challenges the constitutionality of: (1) Idaho Code § 34-708A's requirement that an Independent candidate for President submit a petition containing 6,550 signatures of qualified electors in connection with the declaration of candidacy for the 2012 election; and (2) Idaho Code § 34-1807's requirement that petitions circulated on behalf of a proposed Independent candidate for President must be circulated by Idaho residents.

<u>STANDARD OF REVIEW</u>

I.     <u>Standard of Review for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact **and that the movant is entitled to judgment as a matter of law**."  F.R.C.P. 56(c) (emphasis added).  Defendant agrees that there are no genuine issues of material fact presented in this litigation, but respectfully asserts that Plaintiff is not entitled to the summary judgment he seeks.  Instead, "the pleadings, the discovery and disclosure materials on file, and [] affidavits show . . . that [**Defendant**] is

entitled to judgment as a matter of law," as set forth in Defendant's MSJ Memorandum, Dkt. 28-3.  Id.

## II.   There is a Flexible Standard of Review Regarding Constitutional Challenges to Election Statutes

Plaintiff asserts in his MSJ Memorandum that the standard of strict scrutiny applies to Idaho's residency and signature requirements.  Plaintiff's MSJ Memorandum, pp. 3-4.  In fact, the United States Constitution specifically grants the states broad discretion in the "times, places, and manner of holding elections."  U.S. Const. Art. 1, § 4.  As discussed in Defendant's MSJ Memorandum, the United States Supreme Court has rejected the "erroneous assumption that a law that imposes any burden upon the right to vote must be subject to strict scrutiny."  Burdick v. Takushi, 504 U.S. 428, 432 (1992); see Defendant's MSJ Memorandum, pp. 9-10.   The Court continued:

> . . . [T]o subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest, as petitioner suggests, would tie the hands of States seeking to assure that elections are operated equitably and efficiently.  …

Burdick, 504 U.S. at 433.  Instead, "a more flexible standard applies."  Id.  "If a statute imposes only modest burdens, [] then 'the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions' on election procedures."[1]  Washington State Grange v. Washington State Republican Party, __ U.S. __,  128 S.Ct. 1184, 1192 (2008), quoting Anderson v. Celebrezze, 460 U.S. 780, 788 (1983); see also Burdick, 504 U.S. at 434.

## ARGUMENT

Plaintiff cannot demonstrate that he is entitled to the relief he seeks.  First, his claims are not justiciable, as he lacks Article III standing and as his claims are not ripe for this Court's

---

[1]   For a more detailed discussion of the applicable standard of review, please refer to Defendant's MSJ Memorandum, pp. 9-10.

review.  Even if his claims were justiciable, however, Plaintiff cannot demonstrate that Idaho's statutory provisions governing ballot access for Independent presidential candidates impose a severe burden upon his constitutional rights or that the provisions are not tailored to serve important state interests.   In short, Plaintiff's claims are inappropriately conjectural and premature; involve, at most, the constitutional rights of third parties, rather than Plaintiff; and do not involve constitutional violations.

A.     <u>**Plaintiff's Claims Are Not Justiciable**</u>

   Plaintiff cannot demonstrate that he is entitled to judgment as a matter of law on the claims he has raised in this litigation, because Plaintiff lacks standing to raise the claims at issue and because the claims are not ripe for this Court's review.  These threshold issues are discussed in detail in Defendant's MSJ Memorandum, which Defendant hereby incorporates by reference. <u>See</u> Defendant's MSJ Memorandum, pp. 4-8.

    As discussed in Defendant's MSJ Memorandum, Plaintiff cannot demonstrate that he "has suffered an injury in fact that is . . . concrete and particularized and . . . actual and imminent, not conjectural or hypothetical," which is necessary for Article III standing.  <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 180-81 (2000); Defendant's MSJ Memorandum, pp. 4-6.   Plaintiff is merely a non-resident who "wishes to circulate ballot nomination petitions in the state of Idaho on behalf of an independent presidential candidate, specifically Ralph Nader or other similarly-minded persons."  Complaint, ¶ 5.

    With respect to Idaho's residency requirement for the circulation of petitions, Plaintiff bases his claims on a purely hypothetical candidacy and on his vague, generalized interest in circulating petitions for a hypothetical candidate.  <u>See</u> Defendant's Statement of Facts, ¶¶ 7-9; Defendant's MSJ Memorandum, pp. 5-6.   This is exactly the type of "conjectural or

hypothetical" claim and "generalized grievance" excluded from the courts' jurisdiction.  Alaska Right to Life Political Action Comm. v. Feldman, 504 F.3d 840, 848-49 (9th Cir. 2007); Defendant's MSJ Memorandum, pp. 4-6.

Plaintiff's Equal Protection Clause claim regarding Idaho Code § 34-708A's 1% signature requirement is even farther removed from any actual, concrete injury on the part of Plaintiff himself.  Plaintiff claims that "there is no legitimate basis to conclude that a higher signature requirement **for a Presidential independent candidate** is appropriate when compared to other **independent statewide candidates**, the higher signature requirement violates equal protection [rights of the Independent candidates], and summary judgment is appropriately granted **to Daien**."  Plaintiff's MSJ Memorandum, p. 12 (emphasis added).  Plaintiff fails to demonstrate, however, how a statute allegedly violating the equal protection rights of **Independent candidates** has caused any injury in fact to **Plaintiff**, who does not purport to be an Independent candidate himself.  See Complaint, ¶ 4; Declaration of Donald N. Daien, Dkt. 29-4.  "[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  Wauchope v. U.S. Dep't of State  985 F.2d 1407, 1411 (9th Cir. 1993), quoting Warth v. Seldin, 422 U.S. 490, 499 (1975). As the Ninth Circuit recently articulated:

> **As a general rule, a third party does not [have] standing to bring a claim asserting a violation of someone else's rights**. *Martin v. Cal. Dep't of Veterans Affairs,* 560 F.3d 1042, 1050 (9th Cir.2009) (citation omitted). "Claims premised on the government's treatment of a third-party must satisfy the stringent constitutional standing requirements." *Shanks v. Dressel,* 540 F.3d 1082, 1090 n. 9 (9th Cir.2008) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-62, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ( "**When ... a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of** *someone else,* **much more is needed [to establish causation and redressability**].")).

Kyung Park v. Holder, 572 F.3d 619, 625 (9th Cir. 2009) (emphasis added); see also Thomas v. Mundell, 572 F.3d 756, 760-61 (9th Cir. 2009).

Plaintiff's lack of standing – as well as the lack of ripeness of Plaintiff's claims, see Defendant's MSJ Memorandum, pp. 6-8 – precludes judgment as a matter of law in Plaintiff's favor.

**B.     Idaho Code § 34-1807 and Idaho Code § 34-708A Are Constitutional**

Even if Plaintiff had standing to raise his claims and such claims were ripe for review, the residency requirement of Idaho Code § 34-1807 and the signature requirement of Idaho Code § 34-708A are constitutional.

**1.     Idaho Code § 34-1807's Residency Requirement**

As noted previously, Idaho Code § 34-1807 provides that "[a]ny person who circulates any petition for an initiative or referendum shall be a resident of the state of Idaho . . .."  I.C. § 34-1807.   Petitions filed in conjunction with an Independent candidate's declaration of candidacy must comply with this requirement.   I.C. § 34-708A.

In his MSJ Memorandum, Plaintiff primarily relies upon the case of Nader v. Brewer, 531 F.3d 1028 (9th Cir. 2008), in support of his argument that Idaho's residency requirement is unconstitutional.   Plaintiff's MSJ Memorandum, pp. 7-10.   Plaintiff asserts that "in *Brewer* . . . this Circuit struck down an Arizona statute's residency requirement identical to Idaho's residency requirement" and that "[t]he Ninth Circuit's logic in *Brewer* paralleled that of prior courts facing the identical issue and presaged the incipient trend in all the federal courts."[2]   Id. at 8-9.  Plaintiff's argument fails to recognize, however, the significant differences between Idaho's

---

[2]     At least one Circuit has explicitly upheld as constitutional a residency requirement for circulation of petitions.  Initiative & Referendum Inst. v. Jaeger, 241 F.3d 614, 617 (8th Cir. 2001).

statutory scheme governing ballot access for Independent presidential candidates and the type of statutory scheme struck down by the <u>Nader</u> court.

Specific election laws must be evaluated on a case-by-case basis, as "the rule fashioned by the Court to pass on constitutional challenges to specific provisions of election laws provides no litmus-paper test for separating those restrictions that are valid from those that are invidious . . .." <u>Storer v. Brown</u>, 415 U.S. 724, 730 (1974). "Decision in this context, as in others, is very much a matter of degree, very much a matter of consider(ing) the facts and circumstances behind the law . . .." <u>Id.</u> (internal quotation marks and citation omitted). Additionally, specific provisions should be viewed in the context of the relevant statutory scheme as a whole. <u>See</u> Defendant's MSJ Memorandum, pp. 11-14. As the <u>Nader</u> court recognized: "the burden on plaintiffs' rights should be measured by whether, **in light of the entire statutory scheme regulating ballot access, "reasonably diligent" candidates can normally gain a place on the ballot**, or whether they will rarely succeed in doing so. To determine the severity of the burden, we said that past candidates' ability to secure a place on the ballot can inform the court's analysis." <u>Nader</u>, 531 F.3d at 1035 (emphasis added) (internal citations omitted), *citing to* <u>Libertarian Party of Wash. v. Munro</u>, 31 F.3d 759, 762 (9<u>th</u> Cir. 1994). "In determining the nature and magnitude of the burden that [Idaho's] election procedures impose . . . we must examine **the entire scheme regulating ballot access**." <u>Munro</u>, 31 F.3d at 761-62 (emphasis added).

The Arizona statutory scheme at issue in <u>Nader</u> involved the requirement that circulators of petitions not only be residents of Arizona, but also be **qualified to register to vote** in Arizona; the requirement was not, as Plaintiff asserts, "identical" to Idaho's simple residency requirement. <u>Nader</u>, 531 F.3d at 1031. Unlike the circumstances addressed in <u>Nader</u>, an Idaho resident may

still circulate petitions in Idaho even if that resident is not qualified to register to vote, which significantly expands the pool of eligible petition circulators.  See I.C. § 34-1807.  Many of the cases to which Plaintiff cites in his MSJ Memorandum involve situations where petition circulators were required to be **registered voters**, not simply residents.  See, e.g., Nader 2000 Primary Comm., Inc. v. Hechler, 112 F.Supp.2d 575, 579 (S.D.W.Va. 2000); Nader 2000 Primary Comm., Inc. v. Hazeltine, 110 F.Supp.2d 1201, 1205 (D.S.D. 2000); Bernbeck v. Moore, 126 F.3d 1114, 1117 (8th Cir. 1997); Krislov v. Rednour, 226 F.3d 851 (7th Cir. 2000); Plaintiff's MSJ Memorandum, pp. 8-9.  Contrary to Plaintiff's assertion, the Nader court and many other federal courts touching on the issue of circulation of petitions do **not** involve "identical" circumstances to those presented in the case at hand.

Indeed, Idaho's statutory scheme regarding ballot access for Independent presidential candidates, when viewed as a whole, is far less burdensome than the statutory scheme struck down in Nader.  The Arizona statutory scheme required an aspiring Independent candidate to collect nearly 15,000 signatures, through petitions circulated only by individuals qualified to register to vote in Arizona, which had to be submitted 146 days – or almost five months – before the general election, leading to the unsurprising result that no Independent candidate had appeared on Arizona's ballot since prior to 1993.  Nader, 531 F.3d at 1038.  In contrast, history has proven time and again that "'reasonably diligent' candidates can normally gain a place on the ballot" under Idaho's far less burdensome statutory scheme, which requires a much lower number of signatures, allows for a larger pool of potential circulators of petitions, and provides that signatures need not be submitted until August 25th, which in 2012 will be only 73 days before the general election.  Id. at 1035, *citing to* Munro, 31 F.3d at 762; see Defendant's MSJ Memorandum, p. 12; Defendant's Statement of Facts, ¶¶ 14-19; I.C. § 34-708A; I.C. § 34-101.

Idaho's residency requirement, particularly when viewed "in light of the entire statutory scheme regulating ballot access," Nader, 531 F.3d at 1035, is distinguishable from Nader, and does **not** impose a severe burden on Plaintiff's constitutional rights.  However, even if strict scrutiny is applied to Idaho's residency requirement, the state's interests in regulating the petition process and preventing and prosecuting election fraud, are compelling interests that justify the requirement, id. at 1037, and Idaho's residency requirement is narrowly tailored to address that compelling interest.  See Defendant's MSJ Memorandum, pp. 14-15.  As discussed in connection with Defendant's Motion for Summary Judgment, election fraud in Idaho regarding the circulation of petitions has occurred, as demonstrated by a recent case in which an individual absconded from her supervised probation after pleading guilty to forging signatures on petitions she submitted to the County Clerk.  Id.; Defendant's Statement of Facts, ¶ 12.  Additionally, certain petition circulators have listed motels or hotels as their addresses, indicating a lack of permanent ties to the state.  Defendant's Statement of Facts, ¶ 13; Defendant's MSJ Memorandum, pp. 14-15.  Idaho's residency requirement enables the state to meaningfully regulate the petition process and better ensure the prosecution of election fraud, which are recognized compelling state interests.  See Nader, 531 F.3d at 1037.

### 2.    Idaho Code § 34-708A's Signature Requirement

Plaintiff additionally raises an equal protection claim, challenging the fact that Idaho Code § 34-708A requires that Independent candidates for President must submit the signatures of "1% of the number of votes cast in this state for presidential electors at the previous general election at which a president of the United States was elected,"[3] in contrast to statewide

---

[3]    For the upcoming 2012 presidential election, the number of required signatures for an Independent candidate for President is 6,550.  Ysursa Aff., ¶ 3.

candidates for non-presidential offices, who are required to submit 1,000 signatures to qualify for the ballot.  See Plaintiff's MSJ Memorandum, p. 10; I.C. § 34-708A; I.C. § 34-708(2)(a).

Plaintiff first asserts, without elaboration, that "[s]trict scrutiny . . . applies to this analysis."  Plaintiff's MSJ Memorandum, p. 10.  Plaintiff, however, bears "the initial burden of showing that [Idaho's] ballot access requirements seriously restrict the availability of political opportunity" in order for strict scrutiny to apply.  Munro, 31 F.3d at 762.  Simply because a disparity exists between ballot access requirements for two different types of offices does not automatically render such a difference subject to strict scrutiny.  See, e.g., Rockefeller v. Powers, 74 F.3d 1367, 1377-78 (2d Cir. 1996).

In the case of Libertarian Party of Washington v. Munro, the Ninth Circuit rejected the plaintiffs' attempt to "rely[] primarily on a strained analogy between Washington's ballot access procedures and the laws at issue in [the earlier Supreme Court case of] *Anderson v. Celebrezze*," which "involved a challenge to Ohio laws requiring independent candidates to file petitions signed by at least 5,000 voters five months before major parties chose their candidates, and nearly eight months before the general election."  Id.  The Munro plaintiffs raised an equal protection claim challenging the requirement that Independent candidates declare their candidacies a month before major party candidates.  Id.  The Court upheld the statute at issue, noting that the plaintiffs were "short on specifics" regarding the alleged burden imposed by the statute and stating:

> In determining the nature and magnitude of the burden that Washington's election procedures impose . . .  **we must examine the entire scheme regulating ballot access.  The question is whether "reasonably diligent" minor party candidates can normally gain a place on the ballot, or if instead they only rarely will succeed**.
>
> . . . [U]nlike Anderson himself, who was denied a place on the Ohio ballot, the **Libertarians [Plaintiffs] claim an injury that is entirely speculative**.  All three

candidate plaintiffs . . . evidently had no difficulty in obtaining petition signatures.  In fact, the Libertarians **cite no instance in which any candidate ever has been denied access to the Washington ballot, or otherwise has been disadvantaged, because of the procedures they assail.**

. . .  **This historical experience strongly suggests that Washington's ballot access regulations do not severely burden the constitutional rights of minor parties or their candidates.**  *See Storer*, 415 U.S. at 742, 94 S.Ct. at 1285 (past experience may be indicative of degree of burden).

. . .  The Libertarians simply parrot the language of *Anderson,* without demonstrating how it actually applies to Washington's scheme.  There is no reason to believe that a reasonably diligent minor party candidate will have any difficulty obtaining a place on Washington's primary ballot.

Id. at 762-63 (emphasis added).

Similarly, Plaintiff in this case "rel[ies] primarily on a strained analogy" between the case at hand and the distinguishable Supreme Court case of Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173 (1979).    Id. at 762; Plaintiff's MSJ Memorandum, pp. 11-12.   In doing so, Plaintiff fails to cite any instance in which an Independent presidential candidate – in particular, Ralph Nader – has been denied ballot access under Idaho's present statutory scheme, but instead "claim[s] an injury that is entirely speculative."   Munro, 361 at 762.   In fact, Idaho's "historical experience strongly suggests that [Idaho's] ballot access regulations do not severely burden the constitutional rights" of Independent presidential candidates,[4] who have successfully and repeatedly attained the ballot in Idaho.   Id. at 762-63; Ysursa Aff., ¶¶ 8-13.   As the Second Circuit stated in upholding a political party rule that involved a disparity in the amount of signatures required for ballot access in different

---

[4]   It is even more of a stretch for Plaintiff to argue that Idaho's signature requirement for Independent Presidential candidates somehow burdens Plaintiff, who is not a candidate.  See ACORN v. Bysiewicz, 413 F.Supp.2d 119, 141 (D.Conn. 2005) ("Plaintiffs' reliance on *Illinois State Board of Elections v. Socialist Workers Party* . . . is misplaced, because the Court's finding of an equal protection violation in that case turned on the disparate treatment of similarly situated *candidates*, not voters.")

congressional districts:

> **We believe that the district court was incorrect to conclude, as it apparently did, that the broad language of** *Socialist Workers Party* **automatically requires strict scrutiny for ballot-access measures that result in any sort of disparate treatment**. But we need not decide here the exact scope of *Socialist Workers Party,* because **the plaintiffs have not shown that the disparity in signature percentages significantly burdens their fundamental right[s]** . . ..
> Thus, even considering *Socialist Workers Party* as the controlling legal framework, we still conclude that **strict scrutiny is not required**

Rockefeller, 74 F.3d at 1377-78 (emphasis added).

In sum, Plaintiff cannot demonstrate that Idaho's signature requirement actually imposes a significant burden on the constitutional rights of Independent presidential candidates – let alone on Plaintiff's constitutional rights as a non-candidate. Therefore, strict scrutiny is not the appropriate standard of review.

Plaintiff asserts that Socialist Workers Party "controls the constitutional analysis of I.C. § 34-708A." Plaintiff's MSJ Memorandum, p. 11. However, as discussed above, the strict scrutiny standard applied in Socialist Workers Party is not warranted under the circumstances presented in this case. Furthermore, Socialist Workers Party involved a fundamentally different factual scenario. In that case, Illinois statutes required: (1) that an Independent candidate seeking to gain ballot access for a statewide office submit 25,000 signatures; but (2) that an Independent candidate seeking to gain ballot access for an office in a political subdivision of the state submit signatures totaling 5% of the total number of voters in the previous election for that office, which for the position of mayor of the city of Chicago constituted almost 36,000 signatures. Socialist Workers Party, 31 F.3d at 175-76. "In 1977, an independent candidate or a new political party in Chicago, a city with approximately 718,937 voters eligible to sign nominating petitions for the mayoral election in 1977, had to secure over 10,000 more signatures on nominating petitions than an independent candidate or new party in state elections, who had a pool of approximately

4.5 million eligible voters from which to obtain signatures." Id. at 183-84.  The Court found that
there was no "reason why a petition with identical signatures can satisfy the legitimate state
interests for restricting ballot access in state elections and yet fail to do the same **in a lesser
unit**." Id. at 179 (emphasis added).  Indeed, the State could offer no reason for the requirement
that **almost 11,000 more signatures** had to be submitted for **a lesser office** (and from a pool of
eligible voters **six times smaller** than that available for statewide offices) beyond the explanation
that the 5% signature requirement had historically resulted in a much smaller number of
signatures.  Id. at 186-87.  The Court held: "Historical accident, without more, cannot constitute
a compelling state interest." Id. at 187.  In short, the Socialist Workers Party Court held "that
when a state has determined that a smaller number of signatures in a larger political unit serves
its interests, the larger signature requirements for candidates seeking local offices cannot
reasonably be justified." Libertarian Party of Fla. v. State of Fla., 710 F.2d 790 (11th Cir. 1983),
*citing to* Socialist Workers Party, 31 F.3d at 186-87.

        In contrast to Socialist Workers Party, Idaho's election statutes logically require that a
candidate seeking a lesser, statewide office need not submit as many signatures as a candidate
seeking to be listed on the ballot for the nationwide office of President of the United States.  This
requirement is not, as in Socialist Workers Party, based upon "historical accident" alone, but is
instead a well-reasoned requirement tailored to serve the state's legitimate interests in regulating
access to the ballot.

> The [Supreme] Court has recognized that a State has a legitimate interest in
> regulating the number of candidates on the ballot. In so doing, the State
> understandably and properly seeks to prevent the clogging of its election
> machinery, avoid voter confusion, and assure that the winner is the choice of a
> majority, or at least a strong plurality, of those voting, without the expense and
> burden of runoff elections. . . .  Moreover, a State has an interest, if not a duty, to
> protect the integrity of its political processes from frivolous or fraudulent
> candidacies.

Bullock v. Carter, 405 U.S. 134, 145 (1972).

Plaintiff asserts that requiring more signatures for a Presidential candidate than for a statewide office is inappropriate because a "State has a less important interest in regulating Presidential elections than statewide or local elections because the outcome of the former will be largely determined by voters beyond the State's boundaries."   MSJ Memorandum, pp. 10-11, *quoting* Anderson, 460 U.S. at 795.  As the dissent in Anderson noted: "While [a state] may have a lesser interest in who is ultimately selected by the Electoral College, its interest in who is supported by its own Presidential electors must be at least as strong as its interest in electing other representatives. . . . [T]he Presidential electors['] . . . role in casting [the state's] electoral votes for a President may be second to none in importance."   Anderson, 460 U.S. at 815 (Rehnquist, J., dissenting).  Regardless, however, the state's interest in "regulating the number of candidates on the [state] ballot," including "prevent[ing] the clogging of its election machinery [and] avoid[ing] voter confusion" is equally strong, regardless of what office is at issue.  Furthermore, requiring a slightly larger number of signatures for the office of President of the United States serves the important state interest of ensuring that the Presidential candidate makes "some preliminary showing of a significant modicum of support before printing the name of [the] candidate on the ballot." Jenness v. Fortson, 403 U.S. 431, 442 (1971).  It is reasonable for the required modicum of support to be greater in proportion to the increased significance and influence of the position at stake.  If a potential presidential candidate cannot garner enough initial support within the state of Idaho, even with the benefit of nationwide media attention, to secure signatures in the minimal amount of "1% of the number of votes cast in this state for presidential electors at the previous general election at which a president of the United States was elected," it is reasonable for the State to assume that placing that candidate's name on the ballot would only result in an unnecessary "laundry-list ballot" and voter confusion.

I.C. § 34-708A; Bullock, 405 U.S. at 145 (holding that "a State has an interest, if not a duty, to protect the integrity of its political processes from frivolous . . . candidacies.")

Furthermore, the greater number of signatures required for an Independent presidential candidate is counter-balanced by the fact that Independent presidential candidates are allowed significantly more time to gather signatures than are Independent candidates for other statewide offices.   An Independent candidate for a statewide office other than President must file his declaration of candidacy with the Office of the Secretary of State by no later than the tenth Friday preceding the primary election, which in 2012 falls on March 16th.  I.C. § 34-708(2); I.C. § 34-704; I.C. § 34-102.   In contrast, an Independent candidate for President has until August 25th to file his declaration of candidacy and accompanying petition; thus, a presidential candidate is provided with more than five extra months to gather the additional signatures. I.C. § 34-708A. Id.; I.C. § 34-102; I.C. § 34-704.

In sum, Plaintiff cannot demonstrate that Idaho's minimal signature requirement for Independent presidential candidates violates his constitutional rights.[5]

## CONCLUSION

For the foregoing reasons, as well as the facts and arguments set forth in the documents filed in support of Defendant's Motion for Summary Judgment, Dkt 28, Defendant the Hon. Ben Ysursa respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment.

---

[5]       Notably, the 1% signature requirement is far less burdensome than many states' signature requirements for ballot access, as discussed in detail in Defendant's MSJ Memorandum.  See Defendant's MSJ Memorandum, pp. 15-19; Jenness, 403 U.S. 431; American Party of Tex. v. White, 415 U.S. 767 (1974).  If this Court were to hold that the greater signature requirement for Independent presidential candidates violated the Equal Protection Clause, the Legislature could legitimately impose the 1% signature requirement across the board, requiring all Independent candidates for statewide offices and for the presidential election to submit signatures totaling 1% of the number of votes cast for each office at issue.  See id.

DATED this 2nd day of October, 2009.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By____/s/ Karin D. Jones____
MICHAEL S. GILMORE
KARIN D. JONES
Deputy Attorneys General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of October, 2009, I electronically filed the foregoing DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT 29) with the Clerk of the Court using the CM/ECF system, which sent a Notice of Electronic Filing to the following persons:

Robert E. Barnes
Daniel J. Treuden
The Bernhoft Law Firm, S.C.
207 E. Buffalo St., Ste. 600
Milwaukee, WI  53202

☐ U.S. Mail
☐ Hand Delivery
☐ Certified Mail, Return Receipt Requested
☐ Overnight Mail
☐ Facsimile: (414) 276-2822
☒ CM/ECF

Christ T. Troupis
Troupis Law Office PA
PO Box 2408
Eagle, ID  83616

☐ U.S. Mail
☐ Hand Delivery
☐ Certified Mail, Return Receipt Requested
☐ Overnight Mail
☐ Facsimile: (414) 276-2822
☒ CM/ECF

And, I hereby certify that I served the foregoing document(s) to the following non-CM/ECF Registered Participant(s) in the manner indicated below:

N/A.

☐ U.S. Mail
☐ Hand Delivery
☐ Certified Mail, Return Receipt Requested
☐ Overnight Mail
☐ Facsimile: _____

_____/s/ Karin D. Jones_____
Michael S. Gilmore
Karin D. Jones
Deputy Attorneys General

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 18