Daniel J. Treuden, Wis. Bar # 1052766
The Bernhoft Law Firm, S.C.
207 E. Buffalo Street, Suite 600
Milwaukee, Wisconsin 53202
(414) 276-3333 telephone
(414) 276-2822 facsimile
djtreuden@bernhoftlaw.com

Appearing *Pro Hac Vice*
for Plaintiff Donald N. Daien

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF IDAHO
### SOUTHERN DIVISION

| | |
|---|---|
| DONALD N. DAIEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Case No. 1:09-cv-00022-REB |
| BEN YSURSA, in his official capacity as Secretary of State of Idaho, | ) ) ) ) |
| Defendant. | ) ) |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW THE PLAINTIFF, Donald N. Daien ("Daien"), by and through his attorneys, The Bernhoft Law Firm, S.C., (Attorney Daniel J. Treuden, admitted *pro hac vice*), and files this Reply Memorandum in Support of the Plaintiff's Motion for Summary Judgment.

### INTRODUCTION

Because both parties agree there are no factual issues in dispute, but only disagree over the proper application of law to those facts, summary judgment is appropriate. Furthermore, the

1

parties' respective summary judgment motions are interrelated, basically arguing opposites sides of the same coin.  Consequently, the use of arguments incorporated by reference is entirely appropriate.  Ben Ysursa ("Ysursa") incorporated several of his arguments made in his motion for summary judgment into his opposition to Daien's motion for summary judgment.  Similarly, Daien will do likewise by incorporating all arguments made in his opposition to Ysursa's motion for summary judgment for use in Daien's motion.  This will save the Court and parties the need to read and review voluminous repetitive arguments.  Daien's argument in reply should not be read to abandon or waive any argument he made in opposition to Ysursa's motion for summary judgment, but all of those arguments are incorporated here.

## LEGAL ARGUMENT

**A.    Daien Has Standing and the Case is Ripe for Review.**

Ysursa's initial opposition to Daien's motion for summary judgment incorporated, to a large extent, his argument in his main motion challenging standing and ripeness.  Daien's opposition sufficiently countered Ysursa's concerns, particularly page 3 through 13 of Daien's opposition paper, and Daien's argument is incorporated here.  (Doc. 32, pp. 3-13.)  Daien would like to re-emphasize a couple of points with the following arguments.

With respect to Idaho's residency requirements and Ysursa's argument that the right to petition is inherently linked to a particular candidate, Daien's rights to free speech, free association, and his own voting rights, are not dependent on the presence of a particular candidate.  *See Burdick v. Takushi*, 937 F.2d 415, 417 (9th Cir. 1991) (finding standing in election law challenge to Hawaii's ban on write-in candidates notwithstanding the plaintiff's inability to name any particular candidate he might vote for in the future).  Rather, prospective relief is appropriate "for standing purposes" if "the plaintiff intends to engage in a course of

conduct arguably affected with a constitutional interest . . .." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (internal quotation omitted). Daien's contemplated course of conduct is completely barred by criminal statute because he cannot circulate petitions for anyone.

With respect to the equal protection clause, Daien has standing and the case is ripe for review, because Daien's associational rights and his own vote might be effectively diminished if Idaho's statute unconstitutionally keeps candidates he supports off the ballot. These are both cognizable rights and Ysursa's claim that Daien is defending the rights of third parties is incorrect. *See Anderson v. Celebrezze*, 460 U.S. 780, 783 and 793 (1983) (recognizing that burdens falling unequally on independent candidates impinge on associational rights, and that the "dilut[ion of] the potential value of votes that might be cast . . . in other States" as a cognizable interest of non-residents in an unconstitutional state statute). Daien has standing.

**B.      The Residency Requirement For Ballot-Access Petition Circulators For Presidential Candidates is Facially Unconstitutional.**

*Nader* controls. As Daien set forth in his opposition to Ysursa's motion for summary judgment, Ysursa's attempt to distinguish this case from *Nader* is unpersuasive. Ysursa improperly contextualizes the holding of *Nader* by emphasizing immaterial factual distinctions between the *Nader* plaintiffs and Daien, and legal distinctions between the Arizona and Idaho statutory schemas governing elections. Ysursa's opposition memorandum to Daien's motion for summary judgment reiterated most of the same arguments Ysursa set forth in his memorandum supporting his own motion for summary judgment. Therefore, Daien incorporates his arguments in opposition to Ysursa's motion for summary judgment. (Doc. 32, pp. 16-22.)

*Nader*, while striking down a registered voter requirement, struck it down because the statute barred non-residents from circulating petitions. In response to Ysursa's attack on whether *Nader* controls, a close look at the language in *Nader* is necessary.

> Plaintiffs alleged that two provisions of Arizona's statutory election scheme – the requirement that circulators of nomination petitions **be residents of Arizona** and the [90 day deadline requirement] – violated their rights to political speech and association under the First and Fourteenth Amendments.

*Nader v. Brewer*, 531 F.3d 1028, 1030 (9th Cir. 2008) (emphasis added).

> Nader stresses that **the burdens of the residency requirement** should be measured in terms of the effect the regulations has on the rights of persons like himself who live outside Arizona and wish to circulate petitions in that state.

*Id*. (a parallel situation Daien faces here) (emphasis added).

> Only persons qualified to register to vote in Arizona can circulate petitions. . . . In order to be qualified to register to vote, **a person must**, among other things, **be a resident of Arizona** and must have been a resident at least twenty-nine days before the election ("the residency requirement"). . . . Under this statutory limitation, **all non-residents of Arizona**, including Nader himself, **are prohibited from circulating petitions** in support of Nader's candidacy.

*Id*. (internal citations omitted) (emphasis added).

"The first provision at issue here is **the requirement that petition circulators be residents** of the state." *Id*. at 1035 (emphasis added). "**Arizona's residency provision** appears similar to the **residency requirement** described in *Buckley* [*v. Am. Constitutional Law Foundation, Inc.*, 525 U.S. 182 (1999)]." *Id* at 1036 (emphasis added).

> While the district court correctly observed that there remain millions of potential Arizona circulators, **the residency requirement nevertheless excludes** from eligibility all persons who support the candidate but who, like Nader himself, live outside the state of Arizona. **Such a restriction creates a severe burden** on Nader [a non-resident] and his out-of-state supporters' speech, voting and associational rights. **Because the restriction creates a severe burden** on plaintiffs' First Amendment rights, **strict scrutiny applies**.

*Id*. (emphasis added).[1]

---

[1] It is important to note that the Ninth Circuit recognized non-Arizonans' "speech, voting and associational rights" as cognizable interests affected by the Arizona regulations because Daien, in this case, as a non-Idahoan asserts these interests give him standing to challenge Idaho regulations.

4

*Nader* clearly controls the residency requirement at issue in this case, and Ysursa's attempt to distinguish the *Nader* facts to these facts are futile. There are no "significant differences between Idaho's statutory scheme governing ballot access for Independent presidential candidates and the type of statutory scheme struck down by the Nader court." (Doc. 30, p. 7-8.) The differences are completely immaterial because the salient restriction is the same. Idaho's "residency requirement nevertheless excludes from eligibility all person who . . . live outside the state of [Idaho]." *Nader*, 531 F.3d at 1036.

Regarding whether the Idaho statute at issue here is narrowly tailored to promote a compelling state interest, Ysursa has set forth several arguments considered by *Nader*, all of which were rejected. "The state [of Arizona] urged that the residency requirements was narrowly tailored to further the state's interest in preventing fraud in the election process, in order to ensure that circulators could be located and subpoenaed in time for petition challenges." *Id*. at 1032. The evidence was also similar to the evidence submitted by Ysursa: "The state also submitted evidence of five criminal prosecuting that the state has pursued for petition fraud. The state did not assert that any of the prosecutions had to do with non-resident circulators." *Id*. at 1033. *See also* Doc. 28-5, Ex. H. The Ninth Circuit rejected that argument:

> The state does not provide any evidence, however, to support this contention ["that a 'consent to jurisdiction' system would be unworkable," *Nader*, 531 F.3d at 1037], observing only that professional circulators can be "nomadic." Nor did the state ever contend that its history of fraud was related to non-resident circulators, a history that might justify regulating non-residents differently from residents. . . . We conclude that the state did not meet its burden of showing that this residency requirement is narrowly tailored to further the state's compelling interest in preventing fraud.

*Id*. at 1037.

Therefore, while the interest in preventing election fraud is a compelling state interest, the residency requirement is not narrowly tailored to promote the state's fraud prevention goal.

5

D.     **The Signature Requirements for Presidential Ballot Access Are Greater Than Most Statewide Candidates, and is Unconstitutional, Especially When the State Has Less of an Interest in Presidential Elections Than Solely Idaho Statewide or Local Elections.**

Ysursa's argument opposing Daien's claim that the signature requirement for independent presidential candidates is unconstitutional because it requires approximately 6.5 times more signatures to obtain ballot access than required for all other statewide independent candidates fails to account for a significant factual difference between two lines of cases involving independent candidates and political parties.  The Supreme Court in 1971 upheld a 5% ballot access signature requirement for independent candidates, and subsequently, in 1979, rejected a 5% ballot access signature requirement, and did so without reversing the former case.  Understanding the factual distinctions between these two cases is key to understanding which line of cases are controlling or persuasive authority here.

When equal protection issues are presented, statutes restricting independent candidates' ballot access differently from other independent candidates and statutes restricting independent candidates' ballot access differently than minor political parties' ballot access are subject to strict scrutiny.  On the other hand, when independent candidates' or minor political parties' ballot access are restricted in a manner differently from major political party candidates' ballot access, then rational basis review is appropriate.  Daien also incorporates his opposition to Ysursa's summary judgment motion here in addition to the argument set out here.

In *Jenness v. Fortson*, 403 U.S. 431, 442 (1971), the Supreme Court compared the ballot access requirements of an independent candidate to the requirements major political party candidate faced to obtain ballot access.  The five percent signature requirement was held not to be inherently more difficult than surviving a major party (Democratic or Republican) political presidential primary.

> This claim is necessarily bottomed upon the premise that it is inherently more burdensome for a candidate to gather the signatures of 5% of the total eligible electorate than it is to win the votes of a majority in a [Presidential Democratic or Republican] party primary. That is a premise that cannot be uncritically accepted.

*Id*. at 440.

On the other hand, the Supreme Court also rejected a 5% signature requirement in *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979) by comparing the independent candidates' ballot access requirements in a political subdivision to the independent candidates' and minor political parties' ballot access requirements statewide.[2] "The Illinois Legislature has determined that its interest in avoiding overloading ballots in statewide elections is served by the 25,000-signature requirement. Yet [the state] has advanced no reason, much less a compelling one, why the State needs a more stringent requirement for Chicago." *Id*. at 186.

The key factual distinction between *Jenness* and *Socialist Workers Party* is the fact that the statutes at issue regulated different things. In *Jenness*, the independent candidate signature requirement was alleged to be unconstitutional because major political party candidates did not need signatures to get on the ballot. *Jenness*, 403 U.S. 431. The Supreme Court rejected that argument because independent candidates and major political party candidates are substantially different and the regulations at issue were intended to take those differences into account. *Socialist Workers Party*, on the other hand, involved an equal protection claim that the signature requirement for local independent candidates was unconstitutional because statewide candidates and statewide minor political parties could get on the statewide ballot with less signatures than

---

[2] While *Socialist Workers Party* did involve candidates, and Daien is not a candidate as Ysursa's footnote 4 points out at Doc. 30, p. 12, that fact is does not mean Daien's speech, voting, and associational rights are not directly harmed and burdened by Idaho's unconstitutional regulation. *See Anderson*, 460 U.S. at 783; *see also Nader*, 531 F.3d at 1036.

Chicago required. *Socialist Workers Party*, 440 U.S. 173. This argument was accepted because independent candidates and minor political parties are similar in nature.[3]

None of the cases cited by Ysursa in his opposition paper involve the comparison of independent candidates' ballot access requirements to other independent candidate requirements or political party ballot access requirements. *See Rockefeller v. Powers*, 74 F.3d 1367 (2nd Cir. 1995) (involving state-imposed signature requirements for persons seeking to become a delegate to the Republican National Convention); *Libertarian Party of Washington v. Munro*, 31 F.3d 759 (9th Cir. 1994) ("Nor are the Libertarians injured merely by the fact that they are treated differently from major parties."); *ACORN v. Bysiewicz*, 413 F.Supp.2d 119 (D. Conn. 2005) (involving challenge to pre-election day voter registration requirement); *Libertarian Party of Florida v. State of Florida*, 710 F.2d 790, 795 (5th Cir. 1983) ("Plaintiffs' real complaint is that a minor political party may not run a candidate in a local election without first obtaining access to the state's general election ballot."). In Ysursa's main summary judgment paper, Ysursa also cited *American Party of Texas v. White*, 415 U.S. 767 (1974). That case involved a challenge by new minor political parties and independent candidates over their ballot access requirements vis-à-vis the requirements of major political parties. *Id*. These cases did not require a strict scrutiny analysis.

Daien, on the other hand, relies on the following cases which are akin *Socialist Workers Party* and involve independent candidates and minor political parties in an equal protection

---

[3] There are cases out there that also support the contention that States have less of an interest in regulating independent candidates than minor political parties. "A political group becoming a recognized political party and offering to the electorate a slate of candidates is far different than one individual becoming an independent candidate to run for a particular office." *Arutunoff v. Oklahoma State Election Bd.*, 687 F.2d 1375, 1380 (10th Cir. 1982) (holding that higher ballot access signature requirements for minor (or new) political parties over and above independent candidate requirements is not unconstitutional).

context. *See Greaves v. State Bd. of Elections of North Carolina*, 508 F.Supp. 78 (E.D.N.C. 1980) (comparing a higher independent candidate ballot access signature requirement to a new minor party ballot access signature requirement); *Delaney v. Bartlett*, 370 F.Supp.2d 373 (M.D.N.C. 2004) (comparing a higher independent candidate ballot access signature requirement to a new minor party ballot access signature requirement); *Cromer v. South Carolina*, 917 F.2d 819 (4th Cir. 1990) (comparing independent candidate ballot access deadlines to minor political party deadlines); *Socialist Workers Party*, 440 U.S. 173. Each of these cases required the application of strict scrutiny.

Finally, the later deadline for independent Presidential candidates as compared to other statewide candidates is not an appropriate justification for the higher signature requirement. Independent non-Presidential candidates must submit their papers by March 16, 2012 in the 2012 election cycle. (Doc. 28-3, p. 19.) Independent candidates will have until August 25, 2012 to submit their papers (including signatures exceeding that required by non-Presidential candidates by approximately 6.5 times). But this extra five months is not a sufficient justification for the higher signature burden.

The real reason independent Presidential candidates have additional time to submit their signatures is to satisfy the constitutional concerns expressed in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) which struck down an independent Presidential candidates declaration of candidacy deadline of March 20. *Id*. at 782. Obviously, moving the Idaho deadline back to coincide with the other statewide independent candidates would violate *Anderson*.[4] Allowing a higher signature requirement for independent Presidential candidates than required for other statewide independent candidates to compensate or offset for the additional time Presidential candidates

---

[4] The current statewide independent candidate deadline itself likely violates *Anderson*.

have to collect signatures would allow Idaho to negate the positive public policy and constitutional protections *Anderson* promotes.  Ysursa has failed to show how requiring 6.5 times as many signatures for independent Presidential candidates is narrowly tailored to promote any compelling state interest.

## CONCLUSION

Daien has standing because this suit will remedy direct burdens and harms on Daien's cognizable interests in his speech, voting, and associational rights caused by the unconstitutional bar on Daien's ability to circulate any ballot nomination petitions in Idaho, and by the unconstitutional requirement imposed on independent presidential candidates that they obtain approximately 6.5 times as many signatures as other statewide independent candidates. Furthermore, strict scrutiny applies to both remaining statutes, and Ysursa has failed to articulate how the statutes at issue are narrowly tailored to promote a compelling state interest.

For all of these reasons, Daien prays for an order denying Ysursa's motion for summary judgment in all respects.

Respectfully submitted on this the 22nd day of October, 2009.

                                THE BERNHOFT LAW FIRM, S.C.
                                Attorneys for the Plaintiffs


                                 /s/ Daniel J. Treuden
                                Daniel J. Treuden, Esquire
                                *Pro Hac Vice* Counsel

                                207 East Buffalo Street, Suite 600
                                Milwaukee, Wisconsin 53202
                                (414) 276-3333  telephone
                                (414) 276-2822  facsimile
                                djtreuden@bernhoftlaw.com