LAWRENCE WASDEN
ATTORNEY GENERAL

BRIAN KANE, ISB #6264
Assistant Chief Deputy Attorney General
STEVEN L. OLSEN, ISB #3586
Chief of Civil Litigation
MICHAEL S. GILMORE, ISB #1625
KARIN D. JONES, ISB #6846
Deputy Attorneys General
954 W. Jefferson St., 2nd Floor
P.O. Box 83720
Boise, ID  83720-0010
Telephone:  (208) 334-2400
Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DONALD N. DAIEN, | ) | Case No. 09-022-S-REB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **DEFENDANT'S REPLY TO** |
| vs. | ) | **PLAINTIFF'S MEMORANDUM IN** |
| | ) | **OPPOSITION TO DEFENDANT'S** |
| BEN YSURSA, in his official capacity as | ) | **MOTION FOR SUMMARY** |
| Secretary of State of the State of Idaho, | ) | **JUDGMENT (DKT. 32)** |
| | ) | |
| Defendant. | ) | |

COMES NOW Defendant, the Honorable Ben Ysursa, by and through his undersigned

counsel of record, and hereby submits this Reply to Plaintiff's Memorandum in Opposition to

Defendant's Motion for Summary Judgment, Dkt. 32 ("Plaintiff's MSJ Opposition.")

Plaintiff Donald Daien acknowledges that there are no genuine issues of material fact

associated with Plaintiff's claims in this case, noting: "Daien does not oppose any of Ysursa's

Material Facts set forth in his summary judgment papers . . .."  Plaintiff's MSJ Opp., Dkt. 32,

p. 3.  Given the lack of any genuine issue of material fact, Defendant the Hon. Ben Ysursa

respectfully asserts that summary judgment in his favor is warranted because: (1) Plaintiff's

claims are not justiciable, as he lacks Article III standing and as his claims are not ripe for this

Court's review; and (2) even if Plaintiff's claims were justiciable, Plaintiff cannot demonstrate that Idaho's statutory provisions governing ballot access for Independent presidential candidates impose a severe burden upon his constitutional rights or that the provisions are not tailored to serve important state interests.

**A.     Plaintiff's Claims Are Not Justiciable**

Plaintiff lacks standing to raise the claims at issue, which are also not ripe for this Court's review.   These threshold issues are discussed in detail in the Memorandum in Support of Defendant's Motion for Summary Judgment, Dkt. 28-3 ("Defendant's MSJ Memorandum"), and the Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Dkt. 30 ("Defendant's MSJ Opposition"), which Defendant hereby incorporates by reference. See Defendant's MSJ Memo, Dkt. 28-3, pp. 4-8; Defendant's MSJ Opp., Dkt. 30, pp. 5-7.

In his MSJ Opposition, Plaintiff first asserts that he must demonstrate "only that there is a genuine question of material fact as to the standing elements" in order to defeat Defendant's Motion for Summary Judgment on this issue.  Plaintiff's MSJ Opp., Dkt. 32, p. 3, *quoting* Truth v. Kent Sch. Dist., 524 F.3d 957, 965 (9th Cir. 2008).  However, as noted above, Plaintiff has conceded that he "does not oppose any of Ysursa's Material Facts;" thus, there is no "genuine question of material fact as to the standing elements," but instead only a question of law that can be appropriately decided by this Court.  Id.

As the individual raising the claims in this lawsuit, Plaintiff bears the burden of establishing ripeness and standing.  Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir. 2009).

> The doctrine of standing . . . requires federal courts to satisfy themselves that the plaintiff has alleged **such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction. He bears the burden of showing that he has standing for each type of relief sought.**  To seek

DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

injunctive relief, a plaintiff must show that **he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical**; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury.

Summers v. Earth Island Inst., __ U.S. __, 129 S.Ct. 1142, 1149 (2009) (emphasis added) (internal quotation marks and citations omitted).

Plaintiff is a non-resident who "wishes to circulate ballot nomination petitions in the state of Idaho on behalf of an independent presidential candidate, specifically Ralph Nader or other similarly-minded persons." Complaint, ¶ 5. He contends that he has standing and his claims are ripe for review, despite the generalized, conjectural nature of his purported injury.

Plaintiff argues that his vague wish to engage in the future circulation of petitions is sufficient to confer standing upon him. The cases upon which Plaintiff relies for this proposition in his MSJ Opposition, however, are distinguishable from the circumstances presented here. See Plaintiff's MSJ Opp., Dkt. 32, p. 5. For example, in Tobin for Governor v. Illinois State Board of Elections, 105 F.Supp.2d 882, 883, 886-87 (N.D. Ill. 2000), the court held that the plaintiffs had standing where they challenged the constitutionality of the Board of Election's decision not to certify a slate of candidates for offices in a particular election that had already occurred. In Marijuana Policy Project v. Miller, 578 F.Supp. 2d 1290, 1301 (D.Nev. 2008), citing to Idaho United Coalition for Bears v. Cenarrusa, 234 F.Supp.2d 1159 (D.Idaho 2001), the court held that the plaintiffs had standing because they had circulated petitions in the past and had expressed a clear intention to do so again in the future. Notably, however, the Miller court emphasized that the plaintiffs "also have full control of whether they will do so [circulate petitions] in the future. . . . **[W]hether [the plaintiffs] will circulate an initiative petition does not require a hypothetical action by a third party**. Instead, [the plaintiffs'] intent to circulate future petitions is not speculative . . .." Miller, 578 F.Supp.2d at 1301 (emphasis added).

DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

This case, in contrast, **does** involve "a hypothetical action by a third party" and is more akin to cases that have held that plaintiffs lack standing where their claimed injuries are dependant upon the actions of a third party or rely upon "speculative contingencies." See, e.g., Nelson v. King County, 895 F.2d 1248, 1252 (9th Cir. 1990); Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1100 (9th Cir. 2000); Eggar v. City of Livingston, 40 F.3d 312, 316-17 (9th Cir. 1994). Perhaps most analogous to the case at hand is Thomas v. Anchorage Equal Rights Commission, 220 F.3d 1134, 1139-40 (9th Cir. 2000), in which the plaintiffs asserted their intention to refuse to lease their rental property to an unmarried couple **if** an unmarried couple attempted to rent their property in the future. The court held that the plaintiffs lacked standing because their claimed injury was too speculative, as it was based entirely on the contingency that an unmarried couple would attempt to rent from the plaintiffs in the future. Thomas, 220 F.3d at 1139-40. Similarly, in the case at hand, Plaintiff asserts his desire to circulate petitions in Idaho **if** Ralph Nader or a "similarly-minded person" decides to run in the 2012 Presidential election. Complaint, ¶ 5. Plaintiff does not dispute that neither Mr. Nader nor any other like-minded individual has yet declared his or her candidacy for the Presidency in the upcoming election. Contrary to Plaintiff's assertions that "no additional fact is necessary to adjudicate the matter," (Plaintiff's MSJ Opp., Dkt. 32, p. 6), and that "the parties are unable to point to any reasonably likely intervening event that would moot this case," (id. at 9), Plaintiff's claims are entirely dependant upon an additional contingency – outside the control of Plaintiff – occurring: the candidacy of Mr. Nader or a "similarly-minded person." The failure of any such candidate to run in the election is just the type of "reasonably likely intervening event that would moot this case." Id. at 9. Plaintiff's claims are premature and speculative.

Plaintiff further attempts to rely upon <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc.</u>, 528 U.S. 167 (2000), for the proposition that "[t]he focus on whether a plan is speculative or not is whether the plaintiff sets forth a cognizable interest, and Daien has done just that because circulating nomination petitions is a cognizable interest in and of itself." Plaintiff's MSJ Opp., Dkt. 32, p. 10. The circumstances in <u>Friends of the Earth</u> were not, as Plaintiff insinuates, analogous to this case. In <u>Friends of the Earth</u>, the court held that the plaintiffs had demonstrated an injury in fact where they established that they were **currently** prevented from enjoying the aesthetics of and utilizing for recreational purposes an undisputedly polluted waterway near to where the plaintiffs owned property. <u>Friends of the Earth</u>, 528 U.S. at 182-83. Not surprisingly, the court held that the plaintiffs' statements that they would use the nearby river if it were not polluted and that their property values were less because of the pollution were not purely speculative and hypothetical. <u>Id.</u> at 183-84. This was a much more concrete (and current) claimed injury to the plaintiffs, rather than mere speculation.

Plaintiff appears to place emphasis on the <u>Friends of the Earth</u> court's statement that "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purposes of standing." Plaintiff's MSJ Opp., Dkt. 32, p. 10, *quoting* <u>id.</u> at 183. However, Plaintiff's contention that a particular "cognizable interest" somehow automatically leads to standing is undercut by the court's reference to the fact that a plaintiff raising claims of "the desire to use or observe an animal species, even for purely esthetic purposes," can still lack standing if the claimed injury is too speculative. <u>See</u>, <u>Friends of the Earth</u>, 528 U.S. at 184 (referring to "the speculative 'some-day intentions' to visit endangered species halfway around the world that we found insufficient to show injury in fact.") The mere existence of a **potential** interest is not enough, in and of itself, to confer standing if the Plaintiff

cannot demonstrate that that interest is likely to be affected, rather than speculating that it **could** be affected someday.  Plaintiff must demonstrate a concrete likelihood of an injury-in-fact.

Finally, Plaintiff points to Burdick v. Takushi, 937 F.2d 415, 417 (9th Cir. 1991), which held that the plaintiff had standing to challenge Hawaii's prohibition on write-in votes, although he had not "identified a particular candidate for whom he wants to cast his write-in vote," because "[t]he prohibition is a general statewide restriction that affects [the plaintiff] personally . . .."  Burdick, 937 F.2d at 417; Plaintiff's MSJ Opp., Dkt. 32, pp. 10-11.  Burdick cited to Erum v. Cayetano, 881 F.2d 689, 691 (9th Cir. 1989), which held that the plaintiff had standing to challenge Hawaii's ballot access laws where he "brought this action in his capacity **as a registered voter of the State of Hawaii** as well as in his capacity as an erstwhile and potentially **future candidate**."  Erum, 881 F.2d at 691 (emphasis added).  Plaintiff is not a registered voter of the State of Idaho, nor does he claim to be a potential future candidate in the State of Idaho.  He does not have "a personal stake in the outcome of the election" in Idaho and cannot demonstrate that Idaho's "general statewide restriction affects [him] personally" without being able to point to a concrete likelihood of future activity on his part within Idaho's borders.  Miyazawa v. City of Cincinnati, 45 F.3d 126, 128 (6th Cir. 1995); Burdick, 937 F.2d at 417.

Plaintiff additionally discusses the issue of timing – in relation to ripeness and standing – in his MSJ Opposition.  Plaintiff insinuates that if he waited until his claims were ripe, his claims would be rejected as untimely, citing to the cases of Nader v. Brewer, 386 F.3d 1168 (9th Cir. 2004), and Nader v. Keith, 385 F.3d 729, 736 (7th Cir. 2004), in which the courts denied injunctive relief due to the plaintiffs' delay in filing suit.  Plaintiff's MSJ Opp., Dkt. 32, pp. 3-4.  However, this argument ignores the window of time following a declaration of candidacy on the part of Mr. Nader (or a "similarly-minded person") but before the election is in full swing.  In

both <u>Brewer</u> and <u>Keith</u>, the plaintiffs waited until the last minute prior to the election to file suit, so that the requested injunctive relief would have unreasonably interfered with the elections at issue. <u>Brewer</u>, 386 F.3d at 1169; <u>Keith</u>, 385 F.3d at 736. As the <u>Keith</u> court noted:

> [I]t would be inequitable to order preliminary relief in a case filed **so gratuitously late in the campaign season**. It wasn't filed until June 27, only a little more than four months before the election. **If when he declared his candidacy back in February Nader had thought as he now does that the Illinois election code unconstitutionally impaired his chances of getting a place on the ballot, he could easily have filed suit at the same time that he declared his candidacy.**

<u>Keith</u>, 385 F.3d at 736 (emphasis added).

Plaintiff additionally attempts to rely upon the <u>Keith</u> court's statement that there "would be no question of [the plaintiff's] standing to seek such relief in advance of the submission or even circulation of any petitions." Plaintiff's MSJ Opp., Dkt. 32, p. 4, *quoting* <u>Keith</u>, 385 F.3d at 736. This holding is inapposite to the issue of standing in the case at hand. The plaintiff to whom the <u>Keith</u> court referred was the candidate himself, Ralph Nader. <u>Keith</u>, 385, F.3d at 736. There was nothing hypothetical or conjectural about Mr. Nader's claimed injury **after** he had declared his own candidacy but **before** the circulation or submissions of any petitions. <u>See</u> <u>id.</u> In contrast, Plaintiff in this case is attempting to base his claims on the purely hypothetical assumption that Mr. Nader or an unidentified, "similarly-minded person" **may** run for the Presidency in the 2012 election.

Again, Plaintiff's claims are dependant on the hypothetical actions of a third party – the candidate – and, particularly with respect to the equal protection claim regarding Idaho's signature requirement, Plaintiff's claims involve an attempt to assert the rights of the candidate, rather than his own rights. "[A] plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." <u>Wauchope v. U.S. Dep't of State</u>, 985 F.2d 1407, 1411 (9th Cir. 1993), *quoting* <u>Warth v. Seldin</u>, 422 U.S. 490,

499 (1975); <u>see</u> <u>also</u> Defendant's MSJ Opp., Dkt. 30, pp. 5-7.  In short, Plaintiff lacks standing to bring the unripe claims raised in this lawsuit.

**B.     Idaho Code § 34-1807 and Idaho Code § 34-708A Are Constitutional**

Even if Plaintiff had standing to raise his claims and such claims were ripe for review, the statutory provisions at issue are constitutional.  These arguments are discussed in much greater detail in Defendant's MSJ Memorandum, (Dkt. 28-3, pp. 8-20), and Defendant's MSJ Opposition, (Dkt. 30, pp. 3-4, 7-16), which are hereby incorporated as if set forth in full herein.

1.     <u>Idaho Code § 34-1807's Residency Requirement</u>

In his MSJ Opposition, Plaintiff again primarily relies upon the case of <u>Nader v. Brewer</u>, 531 F.3d 1028 (9th Cir. 2008), in support of his argument that Idaho's residency requirement is unconstitutional.  Plaintiff attempts to minimize Defendant's argument that Idaho's statutory scheme governing ballot access must be examined as a whole, and that Idaho's statutory scheme as a whole does not impose the same burdens as the statutes addressed in <u>Brewer</u>.  However, the <u>Brewer</u> court itself articulated that "the burden on plaintiffs' rights should be measured by whether, **in light of the entire statutory scheme regulating ballot access, "**reasonably diligent" candidates can normally gain a place on the ballot, or whether they will rarely succeed in doing so.  To determine the severity of the burden, we said that past candidates' ability to secure a place on the ballot can inform the court's analysis."  <u>Brewer</u>, 531 F.3d at 1035 (emphasis added) (internal citations omitted), *citing to* <u>Libertarian Party of Wash. v. Munro</u>, 31 F.3d 759, 762 (9th Cir. 1994).  "In determining the nature and magnitude of the burden that [Idaho's] election procedures impose . . . we must examine **the entire scheme regulating ballot access**."  <u>Munro</u>, 31 F.3d at 761-62 (emphasis added).

Plaintiff does not dispute the fact that Independent candidates, including Ralph Nader himself, have successfully attained the Idaho ballot on many occasions. <u>See</u> Statement of Material Facts that Defendant Contends Are Not in Dispute, Dkt. 28-2 ("Defendant's Facts"), ¶¶ 14-19; Plaintiff's MSJ Opp., Dkt. 32, p. 3. Idaho's pure residency requirement – as opposed to the requirement that petition-circulators be registered voters within the state[1] – coupled with Idaho's far less restrictive statutory scheme, is distinguishable from the statutes addressed in <u>Brewer</u>[2] and does not impose a severe burden on Plaintiff's rights. Regardless, Idaho's residency requirement is tailored to serve the undisputedly compelling state interest of preventing election fraud, which has occurred in Idaho in the past. <u>See</u> Defendant's Facts, Dkt. 28 2, ¶¶ 12-13; Defendant's MSJ Memo., pp. 14-15.

2.   <u>Idaho Code § 34-708A's Signature Requirement</u>

Plaintiff's arguments in his MSJ Opposition regarding Idaho Code § 34-708A's signature requirement for Independent candidates for President is nearly identical to the arguments set forth in his MSJ Memorandum. Accordingly, Defendant hereby incorporates his prior responsive arguments, as set forth in his MSJ Opposition, Dkt. 30, pp. 10-16.

---

[1]   As in his MSJ Memorandum, most of the cases to which Plaintiff cites in his MSJ Opposition for the proposition that a residency requirement is unconstitutional involve situations where petition circulators were required to be **registered voters**, not simply residents, or where the residency requirement involved much more restricted, **local residency**, rather than state residency. <u>See</u>, Plaintiff's MSJ Opp., Dkt. 32, p. 19.

[2]   The Arizona statutory scheme required an aspiring Independent candidate to collect nearly 15,000 signatures, through petitions circulated only by individuals qualified to register to vote in Arizona, which had to be submitted 146 days – or almost five months – before the general election, leading to the unsurprising result that no Independent candidate had appeared on Arizona's ballot since prior to 1993. <u>Brewer</u>, 531 F.3d at 1038. In contrast, history has proven that "'reasonably diligent' candidates can normally gain a place on the ballot" under Idaho's far less burdensome statutory scheme. <u>Id.</u> at 1035, *citing to* <u>Munro</u>, 31 F.3d at 762; <u>see</u> Defendant's MSJ Memo., Dkt. 28-3,  p. 12; Defendant's Facts, Dkt. 28-2, ¶¶ 14-19; I.C. § 34-708A; I.C. § 34-101.

Strict scrutiny is not the appropriate standard of review with respect to Idaho's signature requirement.   See Defendant's MSJ Opp., Dkt. 30, pp. 11-13; Munro, 31 F.3d at 762-63; Rockefeller v. Powers, 74 F.3d 1367, 1377-78 (2d Cir. 1996).  This is particularly so given that Plaintiff cannot demonstrate that the statute's regulation of **candidates** imposes a burden upon **Plaintiff**, a non-candidate.  See Defendant's MSJ Opp, Dkt. 30, pp. 6-7 and 12, n. 4; ACORN v. Bysiewicz, 413 F.Supp.2d 119, 141 (D.Conn. 2005).

Furthermore, Plaintiff's heavy reliance on Illinois State Board of Elections v. Socialist Workers Party, 440 U.S. 173 (1979), is misplaced.   As discussed in Defendant's MSJ Opposition, the Socialist Workers Party case involved the distinguishable holding that there was no "reason why a petition with identical signatures can satisfy the legitimate state interests for restricting ballot access in state elections and yet fail to do the same **in a lesser unit**." Socialist Workers Party, 440 U.S. at 179 (emphasis added); Defendant's MSJ Opp., Dkt. 30, pp. 13-15.  In contrast, it is more than reasonable for the State to require that the necessary modicum of support for a Presidential candidate be greater than that for a lesser office.  Id. at 15-16; Jenness v. Fortson, 403 U.S. 431, 442 (1971); Bullock v. Carter, 405 U.S. 134, 145 (1972).

## CONCLUSION

For the reasons set forth above, as well as the arguments set forth in Defendant's MSJ Memorandum, Dkt. 28-3, and Defendant's MSJ Opposition, Dkt. 30, Defendant the Hon. Ben Ysursa respectfully requests that this Court grant his Motion for Summary Judgment.

DATED this 22nd day of October, 2009.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

By      */s/ Karin D. Jones*
MICHAEL S. GILMORE
KARIN D. JONES
Deputy Attorneys General

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of October, 2009, I electronically filed the foregoing with the Clerk of the Court using the SM/ECF system which sent a Notice of Electronic Filing to the following persons:

Robert E. Barnes                                    Christ T. Troupis
Daniel J. Treuden                                   Troupis Law Office PA
The Bernhoft Law Firm, S.C.                         ctroupis@troupislaw.com
rebarnes@bernhoftlaw.com


                        /s/ Karin D. Jones
                        Michael S. Gilmore
                        Karin D. Jones
                        Deputy Attorneys General